May it please the Court, Charles Bonneau for Appellant and Petitioner Alonzo Gomez. Your Honors, this appeal tests whether Petitioner was denied his federal right to due process when his request to sever his trial from his co-defendant was denied. This jury, the State Court jury, was left with the impression that there was a team of Hispanic gang members who were systematically shooting young Asians in Long Beach and that Alonzo Gomez was part of that team. And this oppression was left, despite the lack of any evidence, implicating Mr. Gomez in the second offense. The reason this issue is central to the defendant's conviction is that other crimes' evidence is famously persuasive and a close case, and this was certainly a close case. This, I think, to an impartial observer, has to suggest a finger on the scales of justice. Well, what do we do with the fact that the California courts decided that even if a severance had been granted, this evidence would still have been admissible against Mr. Gomez at a separate trial under the State equivalent? I forget the penal code section, but it's our federal rule of evidence, 404B. That the evidence would still have come in at the Gomez trial, even if he'd been severed from the other co-defendants. I think the court has to look at whether that decision was reasonable or not. But what do we do with the rule that says we don't review state evidentiary rulings on federal habeas? How do we get around that? Well, I think this would be a little bit different if it had been an appeal from a case in which this was admitted against him. But the only issue is severance. But aren't you arguing that what we should declare is a constitutional due process violation by – because of the fact that that evidence was admitted against him? But to do that, we would have to essentially overrule the decision of the California Court of Appeal that said that evidence was properly introduced at the trial because it would have been admissible in any event, even if the case had been severed. Yes. That's an important part of our argument. But the federal law in the United States Supreme Court contemplates that you will do that. And the recent decision, which I cited this morning, Comer v. Shryo, the court looked at – this court looked at those facts in the state court record and determined that it was reasonable to bring in the other crimes evidence. In this case, it was unreasonable because Gomez wasn't even identified. It wasn't even suggested on the record that he was part of the January 17th offense. This court has to take another look at that and determine whether the state court was reasonable in drawing that connection. I'm still having a hard time figuring out how we square the Supreme Court principle that says we don't review on habeas the propriety of state law evidentiary ruling. It really does sound to me like you're saying, no, we can declare as a matter of due process that that decision was wrong because the admission of that evidence violated his right to a fair trial. I think that's your argument, isn't it? This court can determine that the state court determination was unreasonable on that issue. And the court regularly analyzes that, usually finds that it was reasonable, that there was plenty of relevance to the other crimes evidence. But isn't it because we declared that he was deprived of a fair trial under the due process clause? That if this court were to reverse, it would be on the ground that he was denied a fair trial. And a key element of that is that there is no relevance to the January 17th. You can't really say it's not relevant, can you? I mean, the California Court of Appeal ticked off five or six different facts that led it to conclude that that evidence was relevant. I think what you're really arguing is that it was unfairly prejudicial. Well, yes. Now, if it had a lot of relevance, then I couldn't argue this. But if it has little or no relevance, then this court has to take another look at that determination and whether the state court reasonably allowed these cases to go to trial together, these two defendants. Didn't the trial court give the jury what we'd call a neutralizing instruction? No. It didn't neutralize anything. There were two instructions that don't bore on this at all. The trial court didn't tell the jury that evidence of this other event that you claim was prejudicial is to be considered solely in connection with the other defendants' case? No. The California Supreme Court has rules about how this is to be determined. The state court of appeal didn't discuss this issue. But the attorney general has found in the reporter's transcript the word only, which is the kind of thing that I do all the time. I try to do for my clients. I try to find some glitch in the reporter's transcript. Maybe the court reporter heard something that wasn't said. Maybe the judge misspoke. And I seize on those things. And I try to make a mountain out of a molehill. And what the California Supreme Court has said repeatedly and recently is that you have to go back to the written instructions. The word only does not appear in the written instructions. Basically, the California Supreme Court presumes that during deliberations, if one juror says, wait a minute, didn't I hear the word only there somewhere in something the judge said? And the other juror will say, well, let's go take a look at the written instructions and see if it's there. No, I don't see it there. Well, that's the end of it. And that's the rule that the California Supreme Court applies. And it's consistently applied against me, so I'm happy to bring it to the court's attention. The relevance that's now claimed is that the January 17th incident allows us to look into the mind of Figueroa and figure out what he was thinking on January 16th. Is it that? I'm referring specifically, Mr. Bonneau, to Excerpt of Record 48, which is the portion of the California Court of Appeal decision where they rule that the evidence was similar, but also probative. And it seemed to me that the Court of Appeals relied on the gang enhancement as being another justification for the admission of that evidence. So it's not just to show Figueroa's involvement, but also for the separate enhancement. Right. And I've argued, I hope persuasively, that if this gang is as big as they say it is, I would hope that they would have committed another felony at some point. There's 300 or 400 members of this gang. Could they not find another felony to prove the gang enhancement? Where does that get you, though, on federal habeas? I mean, the problem you have is that the California Court of Appeals cited that as another justification for why the evidence was relevant. Well. And now you're asking us to declare as a matter of due process that it was wrong to do that. I don't think that piling up empty rationalizations is going to help their case very much. They have to show why this was so darned important, where it clearly suggests it's clearly so prejudicial. The prosecution that the two crimes were committed as part of an ongoing gang war, and if that's the case, I mean, you may not like it. It might hurt a lot in terms of the reaction by the jury, but if that's the prosecution's theory, why is that not relevant to that? It understates it to say that it hurts a lot. Yeah. I realize that. Yeah. If you've got two Mexican young men who are together on January 16th, and they both say they're part of the same gang, a crime occurs on January 17th. And the theory is that you've got an interracial gang war going on between Asian and Hispanic gangs, then that seems to me to be a pretty strong reason for why it's relevant. It may be terribly hurtful in terms of defending your client. It's hurtful because it gets into racial stereotyping. You don't have any other evidence that Gomez was involved on January 17th particularly. These are two weak cases, and they only become strong and ominous and terrible sounding when you put them together and draw the racial stereotype, the racial stereotype that these two people must have been involved on both days. How is it a racial stereotype if there are interracial wars between gangs? It would be fine if there was any evidence that Gomez was involved on January 17th, but he wasn't. And so why is that, the jury's thinking, why is this here? And the only conclusion is that they are being invited to conclude that he was there both days. Is it that or that the first crime for which there is evidence to link him to was part of a pattern of gang-related assaults? It has to be both, doesn't it? You're trying to argue that the jury was obviously confused and must have thought that Gomez was involved in the second. But the court of appeals seemed to be saying the reason it was relevant was to show that there's a pattern here and that these two people were involved. I guess what I'm hearing is that this is being suggested that Gomez was there on the 17th, which is something they've avoided like the plague. They keep saying, no, no, we didn't mean that he was there on the 17th. They've said that repeatedly in their briefing in an argument. Did the prosecutor argue in the closing argument that Gomez was involved and present at the second murder? These were a rough paraphrase. The evidence shows that at least Figueroa was involved in both offenses, at least. Now, to me, that kind of slyly leaves the door open. We've got this little implication that you're invited to draw here. It makes all the difference that he would not have been convicted on this eyewitness testimony. What was wrong with that? He had a victim that said, this fellow, what's his name, Gomez, shot me. Then the girlfriend said, that's Gomez, and he was there and he was doing the shooting. Now, how do you get around the victim, the young man? How do you get around his testimony? Maybe it's just me, but he picked out Gallegos and Sanchez, two other gentlemen who just happened to be at the party right around the corner. Two days after the shooting, he picked them out of a lineup. How is that possible? He picked both of them out of separate lineups. Isn't it obvious that they shot him? Not necessarily, because he testified at trial that it was Gomez. He had earlier identified Gomez, had he not? Jason Lee was a gentleman who I think concluded that somebody better pay for this. And if it wasn't going to be the guys he identified, then it was going to be the guys that they had there in the orange jumpsuits. But he also identified Gomez prior to the trial, didn't he? He identified him after he saw them in court seated at the defendant's table. Yes, and then at the preliminary hearing he said, that's the guy that shot them. Well, of course that's the guy. This is eight months later and nobody is being charged. The guys he identified aren't being charged. What would you think? So you argue that one to the jury and then you have the girlfriend, it's her boyfriend that was originally tagged as one of the shooters. So she comes forward and says, no, it was Gomez. It's his sister. Lou Sanchez was the sister of one of the people that was picked out at first. Well, I mean, do I have to say anything more? Well, you know, you argue all that stuff to the jury and the jury's decision. You say, well, they did that because of the January 17th evidence against the co-defendant. Even though they were told that there was no evidence to show that your man Gomez was involved in the 17th shooting. There was no evidence on that. It wasn't really excluded for that. There was no limiting instruction when it came in. There's a standard instruction that reminds them of limited purpose that wasn't read. They say the word only appeared, but we don't think so. It's not in the written instruction. And the invitation from the argument was that Figueroa at least was involved, but maybe Gomez too. Well, they didn't say that, did they? They just said there's no evidence on it. I think that's a door that's either open or closed. Well, when you tell the jury you've got no evidence, how in the world can you say the jury then found opposed to that? If you're going to prosecute this case, what you want is to you want them to know about January 17th, you know, and then wash your hands of it and say, well, you know. I agree. I understand what you're saying. And I would probably not abuse it, but prosecutors are tough-minded, single-minded guys, and they do the darndest things. Well, I'm out. I think I'm out of time. I have 10 minutes. I think I have equitable tolling. You've got it. Good argument. Thank you, Mr. Bonnero. Good morning, Your Honors. Deputy Attorney General Tom Shea on behalf of the Respondent. There's just four points I'd like to make, four points that were addressed in the oral argument. The first as to the instructions, here the jurors were given several instructions which would have cured any harm, any risk of harm from this joinder. The first instruction was CALJIC 17.00, which they were told to consider separately the defendants, each defendant's guilt. Another instruction was CALJIC 2.50, which that's the instruction where the word only did not appear. Although that's true, the written version of the instructions also only expressly names Defendant Figueroa. It doesn't in any way name or implicate Petitioner himself. So I think those two instructions were sufficient. How about the oral instruction? The oral instruction, the only additional word was the word only, that the January 17th shooting's evidence only applied to, quote unquote, only Defendant Figueroa. And so that was the oral rendition of the instructions. And that's in no way inconsistent with the written version, which only names Defendant Figueroa. And in addition to that, instructions are to be considered in light of the trial as a whole, and basically the evidence presented at trial as to the January 17th shootings, there's only two witnesses who testified, and neither of them identified or implicated Petitioner as being involved in the January 17th shootings. So in addition to the oral statement and instructions in light of the evidence at trial, it's really highly unlikely that the jurors would have concluded that Petitioner was involved in those shootings. In addition to those instructions, here, the evidence here was admissible for at least two purposes. One was to prove the street gang enhancement, and the other one was to prove Petitioner's liability as an aider and abetter. And the second one was to prove Petitioner's liability as an aider and abetter. In order to prove Petitioner's liability as an aider and abetter, the prosecution was, under California law, was required to prove, one, that he had knowledge of the actual perpetrator's unlawful purpose. And the prosecutor here argued as to the charge shootings, the January 16th shootings, that Petitioner himself directly shot Jason Lye, and that Codefendant Figueroa shot Nora Auch. And he argued that Petitioner aided and abetted Codefendant Figueroa in the shooting of Auch. And aside from the admissibility, I think there's three cases that I wanted to point out. They're all cited in the briefs. One is Zaffiro v. United States, a U.S. Supreme Court case. And the next two are cases from this circuit. One was United States v. Escalante. I believe that's a 1980 case. And United States v. Mazza Ballesteros, and that's a 1995 case. And all three of those cases, in discussing misjoinder and whether misjoinder constitutes a due process violation, all three courts didn't really discuss cross-admissibility. They basically relied upon the instructions. And the instructions in all three cases are very similar to the ones given here, limiting instructions, and also, in particular, the instruction to separately consider each defendant's guilt. Aside from that point, just two other minor points I want to raise. One was the instruction with the word only. Was that given in the Escalante case? If you could let me check my notes, I think in Escalante the instruction was kind of important for me to know, because I was the trial judge in that case. Okay. I didn't realize that, Your Honor. But the instructions were to, in that case, there was some evidence that the co-defendant had ties to organized crime and committed another murder. And there they were instructed to disregard the defendant's ties to organized crime. And also, I think that's the main instruction from the Escalante case. And in Mado Ballesteros, there's a general limiting instruction given, and instructions that the evidence of a co-defendant's other crimes were not to be admitted against the defendant. I think those are similar to the limiting instructions here. And also, again, in Zafiro v. Lane, the instruction there was to separately consider each defendant's guilt. And the instructions here are similar to those instructions given in those three cases. The other two points I wanted to finish with were kind of in addressing his argument for prejudice. And one of his arguments is about the strength of the case, or as he would say, the weakness of the identifications in this case. And really, that's not really a misjoinder claim. That's more of a sufficiency of the evidence claim, and that's really a matter for the jurors to decide. It was up to the jurors to make the credibility calls. And the final point is he raises a claim that there was prejudice here because there was possible racial profiling that was involved, or racial connotations, racial stereotypes. But again, the jurors here were given the standard California jury instruction. I believe it's 1.0, where they're told not to decide the case based on passion or prejudice. So I think those address, I think I've addressed the points brought up by Appellant here. If there's any other questions that the Court wants me to address, I'm more than happy to. Unless there are additional questions, I'll submit on the briefs. Thank you, Your Honors. Thank you very much. A kind prosecutor, you gave back to the defense the four minutes they went over, so that's very good. Thank you, Your Honors. Good job. All right. I believe I'm out of time. Well, we'll give you a minute. Well, I'd be happy to answer any questions. I don't think the instructions that were alleged to be limiting here really have that effect that's attributed to them. Thank you. We'll check that out again. Thank you very much. Thank you. That is being submitted.
judges: Pregerson, Thompson, Tallman